UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LOUIS RAY ROBINSON,

    Plaintiff,

v.                                            Case No.:   6:20-cv-1031-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____

## **OPINION AND ORDER**

Plaintiff Louis Ray Robinson seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED and REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.   **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

A.   **Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

B.   **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v.*

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C. Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits on December 30, 2016, alleging disability beginning August 1, 2016. (Tr. 88, 212-13). The application was denied initially on February 9, 2018, and upon reconsideration on July 13, 2018. (Tr. 88, 108). Plaintiff requested a hearing and on July 11, 2019, a hearing was held before Administrative Law Judge ("ALJ") Jeffrey Ferguson. (Tr. 36-66). On August 14, 2019, the ALJ entered a decision finding Plaintiff not disabled from August 1, 2016, through the date of the decision. (Tr. 23-30).

Plaintiff requested review of the hearing decision and submitted additional evidence. (Tr. 1-6). The Appeals Council denied Plaintiff's request on April 24, 2020, and determined the additional evidence does not relate to the period at issue. (Tr. 1-6). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on June 12, 2020, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 20).

### D. Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021. (Tr. 25). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2016, the alleged onset date. (Tr. 25). At step two,

the ALJ found that Plaintiff had the following severe impairments: "non-ischemic cardiomyopathy, chronic heart failure, essential hypertension and a seizure disorder." (Tr. 25). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.§§ 404.1520(d), 404.1525, and 404.1526). (Tr. 26).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except he can never climb ladders, ropes or scaffolds, must avoid concentrated exposure to workplace hazards such as moving machinery, moving mechanical parts, and unprotected heights.

(Tr. 26). At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a stocker and electrician helper. (Tr. 29).

At step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 29-30). Specifically, the ALJ found that Plaintiff could perform such occupations as:

    (1)   merchandise marker, DOT[1] 209.587-034, light, SVP 2

    (2)   routing clerk, DOT 222.587-038, light, SVP 2

    (3)   ticket taker, DOT 344.667-010, light, SVP 2.

(Tr. 30). The ALJ concluded that Plaintiff had not been under a disability from August 1, 2016, through the date of the decision. (Tr. 30).

## II.   Analysis

On appeal, Plaintiff raises two issues: (1) whether the Appeals Council properly considered the new evidence submitted after the Commissioner denied Mr. Robinson's claim; and (2) whether the Commissioner properly relied on the vocational expert's responses to hypothetical questions in finding that Mr. Robinson retained the RFC to perform a significant number of jobs in the national economy. (Doc. 23, p. 1). The Court will address each issue in turn.

### A.   Whether the Appeals Council properly considered the new evidence submitted after the Commissioner denied Mr. Robinson's claim

After the ALJ's decision dated August 14, 2019, Plaintiff retained new counsel who arranged for Plaintiff to undergo an evaluation with Pinder Rehabilitation Services, LLC, specifically to address the ALJ's statement in the decision that "[t]here is no evidence of reduced cognitive function." (Doc. 23, p. 23, Tr. 26). Plaintiff argues the Appeals Council erred in finding the Social Security

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

- 7 -

Evaluation Report by Flora Ann Pinder, Ph.D. dated November 15, 2019 – approximately three months after the ALJ's decision – does not relate to the period at issue. (Doc. 23, p. 21).

Dr. Pinder is a vocational expert, rehabilitation counselor, and a licensed mental health counselor. (Tr. 12). Dr. Pinder evaluated Plaintiff on November 1, 2019, and completed a Social Security Evaluation Report ("Report") on November 15, 2019. (Tr. 8, 10). In preparation for the Report, she reviewed some of Plaintiff's medical history. (Tr. 8). She interviewed Plaintiff and discussed his prior work and personal history. (Tr. 8-9). Dr. Pinder administered the Wechsler Adult Intelligence Scale-IV ("WAIS-IV") to assess Plaintiff's intellectual functioning. (Tr. 9).

Based on the results of her testing, Dr. Pinder found: Plaintiff's full-scale score was 50, which is very low; Plaintiff showed relative strength on general informational knowledge, indicating he retained some of his remote learning before the stroke; his verbal comprehension was low overall; perceptual reasoning and working memory were significantly impaired; his processing speed was extremely depressed; he had difficulty comprehending instructions; the side effects of his medications likely added to his intellectual decline; and he was unlikely to improve in the future. (Tr. 9-10). She assessed him with memory and other cognitive deficiencies since his stroke in May 2017. (Tr. 10). She also found he had poor recall, was frustrated, had diagnosed anxiety, was confused, struggled with focusing on one

task, needed cueing and repetition of instruction, and had extremely slow processing time. (Tr. 10). Dr. Pinder concluded that Plaintiff would not be able to perform at the pace or persistence required for any substantial gainful activity due to poor memory, difficulty following directions, problems with new learning, and poor endurance. (Tr. 10). She also concluded that Plaintiff was not a candidate for substantial gainful activity due to the multiple challenges he faced, including a very low IQ test score of 50 and significant limitations in the ability to focus or concentrate. (Tr. 10). "It is our opinion that he is not able to perform any work that exists in the local, state, or national economy." (Tr. 10).

"'With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process,'" including before the Appeals Council." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting *Ingram v. Comm'r of Soc., Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir.2007)). The Appeals Council is not required to give a detailed explanation or further address each piece of new evidence individually. *Hargress*, 883 F.3d at 1309 (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014)). Even though the Appeals Council has the discretion not to review an ALJ's denial of benefits, it must consider "'new, material, and chronologically relevant evidence' that the claimant submits" *Id.* (quoting *Ingram*, 496 F.3d at 1261; citing 20 C.F.R. § 404.970(b)). New evidence is chronologically relevant if it relates to the period on

or before the date of the ALJ's decision. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018) (citing 20 C.F.R. § 404.970(b), 416.1470(b) (2016)). "Evidence is material if a reasonable possibility exists that the evidence would change the administrative result." *Id.* (citing *Washington*, 806 F.3d at 1321). If the ALJ's decision is contrary to the weight of the evidence – including the new evidence – then the Appeals Council must grant the petition for review. *Id.*

Here, the Appeals Council denied review, acknowledged Plaintiff had submitted additional evidence from Pinder Rehabilitation Services, but found this evidence did not relate to the period at issue. (Tr. 2). Therefore, the Appeals Council found that this new evidence did not affect the decision about whether Plaintiff was disabled beginning on or before August 14, 2019. (Tr. 2).

The Commissioner does not contest that the Report is "new." (Doc. 23, p. 26-34). Dr. Pinder evaluated Plaintiff on November 1, 2019, and completed the Report on November 15, 2019, approximately three months after the ALJ's decision and, therefore the Report is new evidence. (Tr. 8-15).

The Commissioner argues the Report is not chronologically relevant and, even if chronologically relevant, it does not raise a "reasonable probability" of changing the ALJ's decision. (Doc. 23, p. 27-28). To determine whether the Report is chronologically relevant, the Court will consider: (1) whether the Plaintiff told Dr. Pinder of his cognitive limitations that were present during the relevant period,

before the ALJ's decision; (2) whether Dr. Pinder reviewed medical evidence during the period before the ALJ's decision that reflected some of the same cognitive deficiencies found by Dr. Pinder; and (3) whether there is any evidence of Plaintiff's mental decline since the ALJ's decision. *See Washington*, 806 F.3d at 1322-23; *see also Hargress*, 883 F.3d at 1309. Even a cursory review of the record shows that the Appeals Council's reasons for denial are patently wrong.

As to the first factor, Dr. Pinder discussed Plaintiff's limitations resulting from the side effects of his stroke and seizures, and residual effects from his medications. (Tr. 9-10). The seizures, stroke, and prescribed medications all occurred during the relevant time period prior to the ALJ's decision. For the second factor, Dr. Pinder reviewed some of the available medical records during the relevant period. (Tr. 8). Finally, for the third factor, there is no evidence of a decline in Plaintiff's mental health since the date of the ALJ's decision. Thus, Plaintiff satisfies the criteria for finding the Report chronologically relevant.

Even though the Court finds the Report chronologically relevant, Plaintiff must show it is material, *i.e.,* there is a reasonable possibility that the Pinder Report would change the administrative outcome. *See Hargress*, 883 F.3d at 1309; 20 C.F.R. § 404.970(a)(5). The Court finds there is a reasonable possibility the Report would change the administrative outcome.

The Commissioner argues Dr. Pinder is a vocational expert and as such she is not an "acceptable" medical source but rather an "other" source. (Doc. 23, p. 28). As an "other" source, the Commissioner claims her opinions are not medical opinions and are not entitled to any special significance or consideration. (Doc. 23, p. 28).

For claims filed before March 27, 2017, the Regulations governing evaluation of opinion evidence draw a distinction between "acceptable" medical sources and "other" sources. 20 C.F.R. § 404.1527(a)(1)[2]; SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Acceptable medical sources include licensed physicians and licensed or certified psychologists, whereas "other" sources include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. SSR 06-03p. Only "acceptable" medical sources may establish the existence of a medically determinable impairment. SSR 06-03p. And only "acceptable medical sources" can give medical opinions that may be entitled to significant or controlling weight. *Anteau v. Comm'r of Soc. Sec.*, 708 F. App'x 611, 613 (11th Cir. 2017). But "other" sources, such as Dr. Pinder's opinion, may show

---

[2] For claims filed on or after March 27, 2017, the term "medical opinion" is no longer defined to include a diagnosis, prognosis, or judgment about the nature and severity of an impairment. Rather, it refers only to statements about what the claimant can still do despite any impairment(s), and whether there are any limitations in the claimant's abilities to perform the various demands of work and adapt to work-related conditions. *See* 20 C.F.R. § 404.1513(a)(2).

the severity of an individual's impairment and how it affects the individual's ability to function. SSR 06-03p.

In the decision, the ALJ found Plaintiff had the medically determinable impairment of neurocognitive disorder. (Tr. 25). The ALJ also determined, "[a]s for a possible neurocognitive disorder, there is no evidence of reduced cognitive function." (Tr. 25-26). Based on the evaluation and testing, Dr. Pinder found Plaintiff would not be capable of performing at a pace or persistence required for substantial gainful activity due to low IQ, poor memory, difficulty following directions, problems with new learning, and poor endurance. (Tr. 10). She found Plaintiff had significant limitations on the ability to focus, concentrate, persistence, or pace, which would impair a person's ability to perform even simple, routine, and repetitive tasks. (Tr. 10). This evaluation directly responds to the ALJ's statement that "there is no evidence of reduced cognitive function." (Tr. 26). As an "other" source, Dr. Pinder's evaluation shows not only the severity of Plaintiff's neurocognitive impairments, but also the extent to which his neurocognitive impairments may impair his functionality for work related tasks and settings.[3] In

---

[3] The Commissioner also argues that Dr. Pinder's opinion that Plaintiff could not perform substantial gainful activity is an issue reserved to the Commissioner. (Doc. 23, p. 28 (citing Tr. 10)). The Court agrees. The task of determining a plaintiff's ability to work is within the province of the ALJ, not a doctor or other medical source. *See Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010); 20 C.F.R. § 1527(d)(1). Therefore, the Court will discount those portions of Dr. Pinder's Report concerning Plaintiff's ability to do work and will consider the remaining portions of the Report.

other words, there is a reasonable possibility that Dr. Pinder's opinion would affect the step five analysis of whether Plaintiff is capable of performing work in the national economy, and specifically the jobs of merchandise marker, routing clerk, or ticket taker. (*See* Tr. 30).

The Commissioner also argues that the medical records show no indication of mental limitations, which is inconsistent with Dr. Pinder's opinion; Plaintiff did not seek mental health treatment and no doctors referred him for treatment; and Plaintiff's daily activities and the state agency psychological consultants' opinion do not support Dr. Pinder's opinion. (Doc. 23, p. 30-32). Even though Dr. Pinder's opinion may be inconsistent with the other evidence of record, the medical records in evidence at the time of the ALJ's decision do not specifically address Plaintiff's neurocognitive disorder limitations to the extent in the Report. Plus, the Commissioner does not cite to any medical records that include specific testing for neurocognitive impairments. For these reasons, the factfinder could credit Dr. Pinder's opinion over the other evidence in the record. *See Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1322 (11th Cir. 2015) ("Given that both Dr. Wilson and Dr. Nichols based their opinions [which conflict] on examinations, we conclude there is a reasonable possibility that a factfinder could credit Dr. Wilson's opinions [*i.e.*, the new evidence] over Dr. Nichols's.). If the ALJ had this Report at the time of the decision, the factfinder could reasonably conclude that Plaintiff had

limitations in concentration, persistence, or maintaining pace and, therefore, Court finds there is a reasonable possibility that the Pinder Report would change the administrative outcome. *See Washington*, 806 F.3d at 1321; 20 C.F.R. § 404.1520a(c)(3). Because Dr. Pinder's opinion is new, material, and chronologically relevant evidence, the Appeal Council was required to consider this new evidence and, therefore, the Court remands the action for the Commissioner to consider this evidence in conjunction with all the other evidence in the record.

Upon remand, the Commissioner's consideration of Dr. Pinder's Report concerning the severity of Plaintiff's neurocognitive limitations may affect consideration of the remaining issue concerning the ALJ's RFC determination and hypothetical question to the vocational expert. For these reasons, the Court defers addressing these issues.

### III. Conclusion

The decision of the Commissioner is **REVERSED**, and this action is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to consider the Social Security Evaluation Report from Pinder Rehabilitation Services, LLC in conjunction with the other medical and other evidence of record. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and thereafter close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on August 20, 2021.

/s/ Douglas N. Frazier
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties